**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LifeWorks Technology Group LLC, ) | |
| ) | Case No. 1:17-cv-03217 |
| Plaintiff, ) | |
| v. ) | Honorable Gary Feinerman |
| ) | |
| Walgreen Co., ) | **JURY TRIAL DEMANDED** |
| Defendant. ) | |
| ) | |

**AMENDED COMPLAINT**

Plaintiff, LifeWorks Technology Group LLC ("Plaintiff" or "LifeWorks"), by and through its undersigned attorneys, Lazarus & Lazarus, P.C., as and for its Amended Complaint against Defendant Walgreen Co. ("Walgreens") alleges as follows:

### I. NATURE OF THE ACTION

1. This is an action for breach of contract against Walgreens, which failed and refused to pay amounts due Plaintiff for certain goods, namely electronics, electronic accessories, and fitness technology, that were produced for and delivered to Walgreens, and additional goods with respect to which, by reason of the parties course of conduct and writing, Walgreens was obligated to take in, accept and pay for. Walgreens plundered Plaintiff's goods, traded upon Plaintiff's good hard work and inflicted substantial economic harm upon Plaintiff.

### II. PARTIES

2. Plaintiff is, and was at all times relevant to the above captioned action (the "Action"), a New York limited liability company with its principal place of business at 530 7th Avenue, New York, NY 10018.

3. Defendant Walgreens is an Illinois corporation with its principal place of business at 108 Wilmot Road, Deerfield, IL 60015. Defendant Walgreens owns retail pharmaceutical stores throughout the United States.

### III. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1332(a)(1) and 1367 and general principles of ancillary and pendant jurisdiction because the matter in controversy exceeds $75,0000 and by reason of diversity of citizenship as follows:

5. Plaintiff is a New York limited liability company and has its principal place of business located in New York, New York.

6. Plaintiff's membership is comprised of Harry Adjmi, Amin Adjmi, Eddie Mizrahi, Solomon Fallas and Max Namer, who are all citizens of the State of New York.

7. No owner/member of Plaintiff is a citizen of the State of Illinois.

8. Defendant Walgreens is a citizen of the State of Illinois.

9. Venue in this district is proper pursuant to 28 U.S.C. §1391(b) because Walgreens resides in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

10. This Court has personal jurisdiction over Walgreens: (a) based on the location of Walgreens' principal place of business; and (b) since Defendant engaged in one or more of the wrongful practices in this district and maintains sufficient minimum contacts with this district, such that the exercise of jurisdiction over Defendant by this Court does not offend traditional notions of fair play and substantial justice.

## IV. FACTS COMMON TO ALL CAUSES OF ACTION

11. Plaintiff is a wholesaler and importer of, amongst other things, electronics, consumer electronic accessories, and fitness accessories and typically, as herein relevant, manufactures and imports goods from Asia.

12. Defendant Walgreens operates as the second-largest pharmacy store chain in the United States.

13. In or about 2012, Plaintiff, through its representative and consultancy firm, First Delta Group, Inc., ("First Delta") was introduced to Defendant.

14. Between 2012 and 2016, the Parties conducted business transactions with one another, wherein Rori Dansky ("Dansky"), a Category Manager at Walgreens, ordered goods from Plaintiff through First Delta.

15. Certain of the terms of the business transactions by and between Plaintiff and Walgreens were reflected in various written agreements, including a Walgreen Co. General Trade and Electronic Data Interchange Agreement (the "GTA") (the GTA is annexed hereto as *Exhibit A*) and, as applicable here, a Business Terms Agreement dated June 6, 2003 (a copy of the Business Terms Agreement is annexed as *Exhibit B*) and incorporated by reference herein, wherein "Vendor agree[s] to a guaranteed sale on all products sold to Walgreens contingent upon 60 day markdown strategy."

16. In addition to the terms of the written agreements, Plaintiff and Walgreens agreed that the conduct of Plaintiff and Walgreens pursuant to the written agreements would evidence a course of dealing and a course of performance accepted by the parties in furtherance of their agreements and the transactions by and between Plaintiff and Walgreens.

17. In fact, Exhibit 1 to the GTA at paragraph 4 (c) specifically provided:

> "**Conduct.** The conduct of the parties pursuant to this Agreement, including the use of Signed Documents properly transmitted, shall for all legal purposes, evidence a course of dealing and a course of performance accepted by the parties in furtherance of this Agreement, and Transaction and any other written agreement described in Section 3(a)."

18. In addition to the recognition of the parties' course of dealing and a course of performance specifically provided for in the parties' written agreements, Walgreens Answer and Affirmative Defenses to Complaint and Counterclaim" against Plaintiff (Document #21 on the Court's Electronic Docket of this Action) ("Answer and Counterclaim") at page 15 specifically relies upon "The Parties' Course of Dealing" in framing Walgreens' Counterclaim against Lifeworks, thereby admitting the parties' course of dealing and the course of performance as an accepted part of the parties' agreement ("Agreement").

19. As part of the parties' course of dealing and course of performance, and to facilitate Plaintiff's timely delivery of products manufactured, produced and imported specifically from Asia for Walgreens, Walgreens, most frequently through First Delta, would "forecast" to Plaintiff, Walgreens' requirements for the consumer electronic accessories (the "Goods") Walgreens was ordering.

20. The forecasts communicated to Plaintiff were communicated long in advance of the required delivery date so as to enable Plaintiff to timely manufacture, produce and import the Goods from Asia for Walgreens.

21.     In fact, because of the success of LifeWork's Goods at Walgreens, by 2015, these Goods were "in line" items at Walgreens, included in Walgreens "planograms" which are diagrams showing where retailers put products on shelves, racks and other store fixtures. The planograms play a role in inventory control too, because they help retailers determine the amount of inventory to keep on hand to restock shelves in accordance with the shelf space provided to each product.

22.     Being an "inline" "planogram" product at Walgreens meant that Plaintiff, as the supplier, was required during and over the course of the year to consistently be in a position to immediately replenish the Goods in the "planogram", i.e., Plaintiff and Walgreens would "forecast" Walgreens requirements for Goods and replenishment of the inline planogram product, it being Walgreens' intention to at all times keep Walgreens' retail shelves stocked with Goods for Walgreens' customers to purchase, and part of Plaintiff and Walgreens' Agreement that Plaintiff was obligated to replenish the inline planogram products, and Walgreens was obligated to take in, accept and pay for the replenishment as forecast.

23.     To assist LifeWorks with the forecasting, Walgreens regularly issued detailed spreadsheet reports to LifeWorks showing, among other things, weekly sell through and inventory, month to date sales, and comparison of a current year's sales to prior year's sales. (the "Reports"),

24.     Plaintiff, as well as other "Supplier Partner[s]" of Walgreens, were specifically told by Walgreens that Plaintiff would be assessed a "service level violation fee" to compensate Walgreens for "service interruptions" (lost sales and dissatisfied customers) where Plaintiff shipped Goods to Walgreens with less than a "95% On Time Fill Rate" performance. *See*

***Exhibit C***, attached hereto and incorporated by reference, an April 23, 2015 letter on Walgreens' letterhead to "Dear Valued Supplier."

25.     So as to avoid incurring a service level violation fee and so as to comport with the Walgreens' requirements for 95% "on time fill rate", and as part of the course of dealing and the course of performance of the parties, and with the actual knowledge, participation, understanding and agreement of Walgreens, Plaintiff, with the assistance of First Delta, would use the Reports supplied by Walgreens to "forecast" Walgreens' requirements for Goods and replenishment so as to enable Plaintiff to timely manufacture, produce and imported Goods from Asia for Walgreens.

26.     As part of the parties' course of dealing and the course of performance, and by referring to the Walgreens' Reports, Plaintiff and Walgreens were able to forecast Walgreens' requirements for the inline Goods and replenishment.

27.     By relying on the Reports, inevitably and regularly followed Walgreens' purchase orders and replenishment orders, Plaintiff was able to conform to Walgreens' requirements for the timely delivery of the inline planogram products.

28.     Walgreens intended and knew Plaintiff was relying on the Reports supplied by Walgreens as forecasts to timely manufacture, produce and import Goods from Asia for Walgreens.

29.     For example, and annexed as ***Exhibit D*** to this Complaint, there are purchase orders for Goods (of the same or similar type subject of this action) where the date of the purchase orders precede the required delivery date by, in some instances, merely two weeks. The annexed purchase orders are next summarized:

| Order Number | Order Date | Ship Date |
|---|---|---|
| 01364990 | 02/10/2016 | 02/24/2016 |
| 17364990 | 02/10/2016 | 02/24/2016 |
| 18364990 | 02/10/2016 | 02/24/2016 |

30. The **Exhibit D** purchase orders and the nominal lead time from the date of the purchase order to the date of delivery is evidence of the parties' course of dealing and the course of performance wherein and whereby each of Plaintiff and Walgreens relied on the preexisting forecast based on the Reports, Plaintiff to manufacture, produce and import the Goods from Asia for Walgreens, and Walgreens to plan its products and sales to its retail customers. Clearly, and but for the forecasts and Reports, Plaintiff could not have manufactured, produced and imported Goods from Asia to timely fill Walgreens' delivery requirements.

31. In fact, the importance of the Reports as forecasts was further confirmed by (consistent with Walgreens' April 23, 2015 admission) a "Weekly Forecast Scorecard" report issued by Walgreens which contains forecast accuracy performance for all items for the previous five weeks.

32. The weekly Reports reported on 88 criteria, including total forecast, total sales, total units, total forecast dollars, total sales dollars, total sales units, total forecast sales and total forecast to sales. A copy of a typical Walgreens' email enclosing a weekly scorecard report is annexed hereto and made a part hereof as *Exhibit E*.[1]

33. In other words, the Weekly Forecast Scorecard report compared actual sales of Plaintiffs' Goods at Walgreens to the forecasted sales, i.e. the sales of Plaintiff and Walgreens anticipated by the Reports. If Plaintiff's performance as against the forecast set forth in the

---

[1] The Report attached as part of Exhibit E is 88 columns, and is attached hereto as an 11 page document read from left to right.

Reports did not conform to the Reports, Plaintiff would be penalized, as set forth in Exhibit C to this Complaint.

34. Plaintiff was obligated to manufacture, import and deliver Goods to Walgreens consistent with the requirements set forth in the Reports and Walgreens was obligated to take in, accept and pay for the Goods subject of the Reports. This was the parties' Agreement, the established course of dealings and course of performance of the parties referred to in Exhibit 1 of the GTA at paragraph 4(c) (see Exhibit A annexed hereto).

### V. THE GOODS NOT PAID FOR BY WALGREENS

#### A. Walgreens Failed to Pay Invoiced Amounts for Goods Delivered

35. In or about April through June 2016, Plaintiff and Walgreens entered into agreements wherein Walgreens purchased consumer electronic accessories (collectively, the "Unpaid Goods") from Plaintiff.

36. Dansky, on behalf of Walgreens, ordered the Unpaid Goods from Plaintiff.

37. Plaintiff shipped the Unpaid Goods to Walgreens.

38. Upon information and belief, Walgreens accepted delivery of the Unpaid Goods and sold the Unpaid Goods in its retail store locations and online.

39. In or about April through July 2016, Plaintiff issued invoices for the Unpaid Goods to Walgreens in the amount of $3,127,185.60.

40. Walgreens made a partial payment on the invoices.

41. Despite receipt of the invoices, Walgreens has failed and refused to pay Plaintiff the amount of $1,285,432.27 for the Unpaid Goods, including amounts due for wrongful and improper deductions and credits, which amount remains due and owing to Plaintiff.

42. Annexed hereto and made a part hereof as *Exhibit F*, is Plaintiff's Custom A/R Aging Detail as of March 7, 2017 showing a balance due of $813,747.09, which such sum together with amounts due Plaintiff for unauthorized chargebacks and deductions totaling $471,685.18 equals a total amount due and owing to Plaintiff from Walgreens of $1,285,432.27.

43. Walgreens owes Plaintiff $1,285,432.27 for Goods sold and delivered to Walgreens by Lifeworks, no part of which has been paid although due demand has been made by Plaintiff to Walgreens.

### B. Walgreens Failed to Accept Goods Manufactured Pursuant to the Agreements

44. In 2016, the parties, consistent with their course of dealings and course of performance and by and through various Reports and forecasts, agreed that Walgreens would purchase Goods from Plaintiff consistent with the Goods being inline planogram products (the "2016 Agreements").

45. The 2016 Agreements required Plaintiff to deliver Goods consistent with Plaintiffs' obligation to keep Walgreens shelves consistently stocked with the inline planogram products. To do that Plaintiff relied on the Walgreens 2015 Reports and the Walgreens 2016 Reports received by Plaintiff from Walgreens, consistent with the course of dealings and the course of performance of Plaintiff and Walgreens. Copies of certain of the 2015 Reports and 2016 Reports are annexed as *Exhibit G* and *Exhibit H* respectively.

46. In 2016, Walgreens knew and intended that Plaintiff would rely on the Reports to forecast and to manufacture, produce and import and, thereafter, sell Goods to Walgreens in 2016 (the "2016 Goods") and Plaintiff, in fact, did so rely.

47. Plaintiff was therefore obligated to manufacture, import and delivery goods to Walgreens consistent with the requirements set forth in the Reports and Walgreens was obligated to take in, accept and pay for the 2016 Goods subject of the Reports.

48. In compliance with the 2016 Agreements, Plaintiff caused to be manufactured and imported for Walgreens the 2016 Goods.

49. But in or about July 2016, Walgreens willfully, wrongfully and unjustifiably cancelled Walgreens remaining obligations to take in the 2016 Goods pursuant to the 2016 Agreements.

50. At the time of Walgreens wrongful cancelation of the 2016 Agreements, Plaintiff was left with approximately 228,045 units of 2016 Goods, with an invoice value of approximately $534,673.47, on hand. A schedule of that portion of 2016 Goods is annexed hereto as *Exhibit I*. In addition, and by reason of the 2016 Agreements based on the Reports annexed as Exhibits G and H, Walgreens was obligated to take in, accept and pay for an additional $2,000,000.00 in goods from Plaintiff.

## VI. CAUSES OF ACTION

### COUNT I—BREACH OF CONTRACT

51. Plaintiff repeats, realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

52. In or about April through June 2016, Plaintiff and Walgreens entered into an agreement (the "Agreement"), whereby Plaintiff agreed to sell and Walgreens agreed to purchase the Unpaid Goods in exchange for payment by Walgreens in the amount of $3,127,185.60.

53. Plaintiff fully performed its obligations under the Agreement.

54. Walgreens breached the Agreement by failing to pay the amount due of $1,285,432.27 as set forth on Exhibit F, inclusive of $471,685.18 for unauthorized chargebacks and deductions.

55. By reason of the foregoing, Plaintiff is entitled to judgment against Walgreens in the amount of $1,285,432.27 together with interest.

## COUNT II—BREACH OF CONTRACT

56. Plaintiff repeats, realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

57. In 2016, the Parties entered the 2016 Agreements.

58. In accordance with 2016 Agreements, Plaintiff commenced manufacturing and manufactured the 2016 Goods for Walgreens.

59. However, in or about July 2016, Walgreens willfully, wrongfully and unjustifiably cancelled the 2016 Agreements and refused to accept the balance of the 2016 Goods subject of the 2016 Agreements, leaving Plaintiff with a balance of the 2016 Goods on hand, namely 228,045 units with an invoice value of approximately $534,673.47.

60. Plaintiff fully performed its obligations under the 2016 Agreements.

61. Walgreens breached the 2016 Agreements by willfully, wrongfully and unjustifiably cancelling and refusing to accept the portion of the 2016 Goods as set forth on Exhibit I which were manufactured and imported by Plaintiff for Walgreens.

62. By reason of the foregoing, Plaintiff is entitled to judgment against Walgreens in the amount of $534,673.47, together with interest.

## COUNT III—BREACH OF CONTRACT

63. Plaintiff repeats, realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

64. Plaintiff fully performed its obligations under the Agreement.

65. When Walgreens cancelled its 2016 Agreement to take in, accept and pay for the 2016 Goods that were the subject of the Reports and the forecast, Walgreens breached the 2016 Agreements by refusing to take in, accept and pay for the 2016 Goods subject of the 2016 Agreements.

66. By reason of the foregoing, Plaintiff is entitled to judgment against Walgreens in an amount as of yet undetermined but estimated to be not less than $2,000,000.00 for the additional Goods forecast through the Reports received by Plaintiff from Walgreens setting forth the Agreements of the parties and consistent with the course of dealings and course of performance.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Walgreens as requested herein, on each of its causes of action, for the costs incurred of the suit herein and for such other and further relief as this Court deems just and proper.

**JURY DEMANDED**

    Plaintiff requests a trial by jury on all issues so triable.

Dated: August 3, 2017                    LifeWorks Technology Group LLC

/s/ Harlan M. Lazarus
Harlan M. Lazarus
LAZARUS & LAZARUS, P.C.
240 Madison Avenue, 8th Floor
New York, NY 10016
(212) 889-7400
hlazarus@lazarusandlazarus.com

*Admitted Pro Hac Vice*

Steven B. Towbin (#2848546)
SHAW FISHMAN GLANTZ & TOWBIN LLC
321 N. Clark Street, Suite 800
Chicago, IL 60654
(312) 541-0151
stowbin@shawfishman.com

*Local Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

Steven B. Towbin certifies that he caused to be served a true copy of the above and foregoing pleadings upon the following Electronic Mail Notice List through the ECF System which sent notification of such filing via electronic means to the following ECF Service List on August 3, 2017.

/s/ Steven B. Towbin

# Mailing Information for a Case 1:17-cv-03217

## Electronic Mail Notice List

- **Robert M. Andalman**
  randalman@aandglaw.com,ldavlin@aandglaw.com,edavis@aandglaw.com
- **Carrie E. Davenport**
  cdavenport@shawfishman.com
- **Allison Hudson**
  ahudson@shawfishman.com,lgonzalez@shawfishman.com
- **Harlan M. Lazarus**
  hlazarus@lazarusandlazarus.com,ysutton@lazarusandlazarus.com
- **Steven Bennett Towbin**
  stowbin@shawfishman.com,cknez@shawfishman.com
- **Candace Gaston Turner**
  cturner@aandglaw.com,ldavlin@aandglaw.com,edavis@aandglaw.com

## **LIST OF EXHIBITS TO AMENDED COMPLAINT**

| | |
|---|---|
| Exhibit A | Walgreen Co. General Trade and Electronic Data Interchange Agreement |
| Exhibit B | Business Terms Agreement |
| Exhibit C | April 23, 2015 letter on Walgreens' letterhead to "Dear Valued Supplier" |
| Exhibit D | Purchase orders for Goods |
| Exhibit E | Typical Walgreens' email enclosing a weekly scorecard report |
| Exhibit F | Plaintiff's Custom A/R Aging Detail as of March 7, 2017 |
| Exhibit G | Walgreens 2015 Reports |
| Exhibit H | Walgreens 2016 Reports |
| Exhibit I | Balance of the portion of 2016 Goods |